U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

AUG 2 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

---

DEBRA S. SARPY, ET AL.

versus                                      CIVIL ACTION NO. 04-1373

                                            JUDGE TOM STAGG

TOWN OF HOMER, ET AL.

---

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendants: the Town of Homer ("the Town"); Huey Dean ("Dean"), Mayor of the Town, officially and individually; and J.C. Moore ("Moore"), Billy Kirk Jenkins ("Jenkins"), Johnetta Faulkner ("Faulkner"), Thomas McDonald ("McDonald"), and Jessie J. Ford ("Ford"), members of the Board of Selectmen ("the Board"), officially and individually. See Record Document 41. For the reasons set forth below, the defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

On January 1, 2003, Dean, a white male, and the newly elected members of the Board were sworn into office as mayor and members of the Board of Selectmen. The new Board was comprised of five members: Faulkner, a white female; McDonald, a white male; and Ford, Moore, and Jenkins, all black males.

1

A special, duly-noticed town meeting was held on February 20, 2003, and Carlos Martin ("Martin"), a Certified Public Accountant hired by the Town, informed the Board about the financial condition of the Town.  Dean and the Board were told that the Town was faced with a financial crisis stemming from the previous administration's mismanagement of a restricted industrial fund. The Town, through the Board, decided to consider various cost-cutting measures, including a reduction in force.

The Board voted to accept the recommendation of Dean and adopt fourteen cost-cutting measures, including the termination of eight office employees.  As a result the plaintiffs, Debra Sarpy ("Sarpy"), Town Treasurer, Linda Robinson ("Robinson"), Mayor's Administrative Assistant, and Linsey Jones ("Jones"), Animal Control worker, all African-American, were fired.  Five other employees were also fired, four of whom were African-American, and one of whom was white. Each plaintiff received a letter stating that the financial condition of the Town was the cause of his or her termination.

Prior to the reduction in force, a December 18, 2002 census showed that the Town's office employed thirty people, five of whom were white and twenty-five of whom were African-American.[1]  After the reduction in force, African-Americans

---

[1]The plaintiffs dispute this fact, but have presented no evidence to rebut the defendants' documentation that supports this finding.

2

were still the majority in the Town's office staff.

The plaintiffs claim that they were discriminated against on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. They also claim that they were denied the right to make and enforce contracts on a basis equal to that of similarly situated whites, in violation of 42 U.S.C. § 1981. They claim that the defendants violated their rights to fair and equal treatment under the Equal Protection and Due Process clauses of the Fourteenth Amendment, violating 42 U.S.C. § 1983. Additionally, they claim that the defendants conspired together to terminate them, violating 42 U.S.C. § 1985. Sarpy and Robinson claim that they were also discriminated against because they are women.

## II.  LAW & ANALYSIS

### A.    Summary Judgment Standard.

"Summary judgment is not favored in claims of employment discrimination." Waggoner v. City of Garland, 987 F.2d 1160, 1164 (5th Cir. 1993). However, summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002).

If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999). However, when ruling on a motion for summary judgment, "doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Bishop, 238 F.3d 586, 589 (5th Cir. 2000).

## B.   Qualified Immunity.

The individual defendants assert a defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate "clearly established rights of which a reasonable person would have known." White v. Taylor, 959 F.2d 539, 544 (5th Cir. 1992) (citing Harlow v. Fitzgerald, 457 U.S.

4

800, 818, 102 S. Ct. 2727, 2738 (1982) (internal quotations omitted)).   To determine if a government official is entitled to qualified immunity, the "objective reasonableness of the action" must be examined in light of the legal rules "clearly established" at the time the action was taken. Id. "The law is deemed to be clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates a right." Id. If reasonable public officials could disagree over whether the defendant's actions were lawful, the defendant is entitled to qualified immunity. See id.

As discussed more fully below, the plaintiffs have not presented evidence that the individual defendants violated their clearly established rights. A broad allegation that the Board fired them because of their race or sex is not sufficient absent any evidence supporting a finding that race or sex motivated the decision. The evidence before the court shows that Dean and the Board voted to terminate the plaintiffs' positions in order to remedy the financial crisis the Town was experiencing. The plaintiffs have presented no evidence that the Board made the decision for reasons that would violate their rights, and have not, for that reason, overcome the defendants' qualified immunity. Therefore, the individual defendants are entitled to qualified immunity from each of the claims asserted by the plaintiffs.

## C.   The Plaintiffs' Claims.

### 1.   Title VII and 42 U.S.C. § 1981 Claims.[2]

Title 42, United States Code, section 2000e-2(a)(1) states: "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." A plaintiff may prove employment discrimination through direct or circumstantial evidence. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, the plaintiffs' claims are evaluated using the clear evidentiary framework for proving a claim by circumstantial evidence, set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

Under this analysis, if the plaintiffs establish a prima facie case of discrimination, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for terminating each plaintiff's employment. See id. at 802-03. If the defendants meet this burden, the plaintiffs then bear the ultimate burden of proving that the defendants' proffered reason is not true but instead is a pretext for the real discriminatory purpose. See id.

---

[2]The plaintiffs have asserted claims under both Title VII and 42 U.S.C. § 1981. Because the analyses under both statutes are identical, only one is employed in evaluating the plaintiffs' Title VII and section 1981 claims. See Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005).

To carry this burden, the plaintiffs must rebut the non-discriminatory reason articulated by the defendants.  See Laxton, 333 F.3d at 578.  The plaintiffs can establish pretext by "showing that [the defendants'] proffered explanation is false or 'unworthy of credence.'"  Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000)).  The proper standard of proof is whether "but for" the discriminatory purpose the plaintiffs would not have been terminated.  See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).  At the summary judgment stage, the question is not whether the plaintiffs have proven pretext, but rather whether they have raised a genuine issue of fact with respect to pretext.  See Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996).

This court will assume, without deciding, that a prima facie case exists, and will therefore proceed to the next step of the McDonnell Douglas analysis.  Thus, the burden of production is shifted to the defendants to proffer a legitimate, non-discriminatory reason for the challenged employment actions.

The defendants have satisfied their burden of producing a legitimate, non-discriminatory reason for eliminating each plaintiff's position.  Their burden in this regard "is one of production, not persuasion . . . [and] can involve no credibility assessment."  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000) (citation omitted).  In support of their motion for summary judgment, the defendants offer the affidavit of Dean, who made the recommendation to eliminate

7

the plaintiffs' positions.  See Record Document 41, Ex. A.  In the affidavit, Dean asserts that the Town was faced with a financial crisis, forcing him to consider cost-cutting measures, including the termination of eight office employees. See id. Dean asserts that Sarpy's position as Town Treasurer was temporarily vacated because outside consultants had been hired to do the same tasks, Robinson's position of Administrative Assistant to the Mayor was eliminated because Dean determined that he did not need secretarial help, and Jones's position was eliminated because Dean was willing to assume the duties of the animal control worker to save money. See id. The defendants also produced a copy of the minutes from the February 20, 2003 town meeting, where Martin informed the Board about the Town's financial condition, and a copy of Dean's recommended cuts in the Town's spending. See id. This evidence supports Dean's and the other defendants' assertions that the positions were eliminated because of financial constraints the Town was facing: a legitimate, non-discriminatory reason.

The plaintiffs have put forth very little evidence that this reason was pretext for discrimination.  In order to survive summary judgment, the plaintiffs must demonstrate that the defendants acted with discriminatory intent. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). This they have not done. In support of their contentions, they offer the affidavit of David Jeroune Aubrey ("Aubrey"), the mayor during the term preceding Dean's term as mayor. His

8

statements that he did not mismanage town funds and leave the town in a financial crisis are not convincing. The plaintiffs have not presented any business records to support Aubrey's contentions. Furthermore, even if he did believe that the Town was not in a bad financial condition, this does not show that Dean could not have reasonably felt that the situation was unacceptable. Different mayors are certainly entitled to have different money management styles, and a leadership position such as that of mayor allows great discretion. Ultimately, even if the plaintiffs did produce evidence that the Town was not in a financial situation that necessitated the termination of their positions, they still have presented no evidence that the decisions were in any way motivated by illegal discriminatory intent.

In support of the plaintiffs' assertions that the proffered reason was actually a pretext for discrimination, the plaintiffs offer only their own personal feelings, with no explanation of what caused them to have such feelings.[3]  See Record

---

[3]In Sarpy's affidavit, she states, "I . . . feel that this was a racist decision against myself and the other African American employees." Record Document 65, Affidavit of Sarpy. She explains that she bases this conclusion on the fact that other white employees were not fired.  See id.  This argument is unpersuasive considering that many other African-American employees were also not fired, and that the majority of the employees remaining after the plaintiffs' terminations were African-Americans.

Robinson states in her affidavit, "I truly believe that because I am an educated African-American female that I intimidated the mayor and several members of the council." She continued, "[s]everal remarks made by Mayor Dean attributes to this statement," but provides no example of any of the alleged comments. Record Document 65, Affidavit of Robinson.

Document 65. They have presented no evidence that would lead a reasonable person to believe that the terminations were actually motivated by racially discriminatory intent.

Furthermore, the evidence before the court does not support such a finding. Three of the five board members on the Board that voted to terminate the plaintiffs were African-American. In addition, the majority of the employees remaining after the plaintiffs were terminated were also African-American. Even if the plaintiffs were more qualified than employees who were not fired, as they assert, Title VII does not protect an employee from unfair employment decisions. Instead, it protects against employment decisions based upon discriminatory animus. See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997).

Similarly, Sarpy and Robinson have offered no evidence supporting their claims that the termination of their positions was motivated by sex discrimination. The employees who were retained that they assert should have been fired instead were also women. Again, the plaintiffs' feelings that their terminations were motivated by a discriminatory animus, absent any evidence supporting these feelings, will not satisfy the plaintiffs' burden.

The ultimate question in establishing a claim for discrimination is whether "but for" the discriminatory purpose, the plaintiffs would have been terminated. Even if the court concluded that the Town was not in a financial crisis, the showing

10

of pretext alone is not enough to establish a Title VII claim.  The plaintiffs have presented no evidence of discriminatory motive and the Title VII and section 1981 claims therefore fail.

### 2.    42 U.S.C. § 1983.

The United States Supreme Court and the Fifth Circuit have held that municipal liability under section 1983 requires proof of three elements:  a policymaker, an official policy, and a violation of constitutional rights where the moving force is the policy or custom.  See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The defendants assert that the plaintiffs have failed to demonstrate a constitutional violation that can be causally linked to an actual policy or custom.  As discussed above in the Title VII analysis, the plaintiffs have failed to show that an illegal factor motivated the defendants' decision to terminate the plaintiffs. Therefore, the plaintiffs have not shown any constitutional violation.  Because the plaintiffs have not established that a constitutional right was violated, the section 1983 claim must also be dismissed.

### 3.    Equal Protection and Due Process.

In support of their equal protection claim, the plaintiffs state only that they "show that defendants intentionally and purposefully discriminated against them on the basis of their race and or gender."  Record Document 65.  However, as

11

discussed above, the plaintiffs have presented no evidence that either race or gender played a part in the decision to terminate their positions. Therefore, the plaintiffs' equal protection claim should be dismissed.

Presumably in support of their contention that their due process rights were violated, the plaintiffs allege that they were not given an opportunity to be heard at the meeting where the decision was made to terminate their positions. The plaintiffs have not presented evidence to support this assertion. Furthermore, the plaintiffs have also failed to support their claim with an explanation of how such a failure would violate their due process rights. Accordingly, the plaintiffs' due process claims must also be dismissed.

### 4.   42 U.S.C. § 1985.

The plaintiffs assert that the defendants violated 42 U.S.C § 1985 by engaging in a conspiracy to deprive them of their due process and equal protection rights. They allege that the members of the Board conspired to deprive African-Americans and women of their rights to earn a living without due process.

As discussed above, the plaintiffs have not presented sufficient evidence to show that any of their rights were violated. Furthermore, it is questionable whether the defendants, who are all members of the same collective entity, would be considered two or more separate "people" as necessary to establish a conspiracy. See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist., 926 F.2d 505, 510 (6th

Cir. 1991) (holding that because a school superintendent, an executive director of the district, and a school administrator, were all employed by the school board which is a collective entity, they were not two or more separate people as required to form a conspiracy).  Therefore, the section 1985 claim should also be dismissed.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment (Record Document 41) is **GRANTED**.

A judgment in accordance with this memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this **13**$^{nd}$ day of August, 2007.

JUDGE TOM STAGG

13